UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAYFAYETTE DIVISION

| | |
|---|---|
| MICHELLE DAWN MASON,<br>   Plaintiff, | )<br>)<br>) |
| v. | ) CAUSE NO.: 4:20-CV-42-JVB-JPK |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner<br>of Social Security Administration,<br>   Defendant. | )<br>)<br>)<br>) |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

  This matter is before the Court on a Complaint [DE 1], filed on June 2, 2020, and Plaintiff's Brief in support of reversing the decision of the Commissioner of Social Security denying Plaintiff's claim for disability insurance benefits [DE 16]. Defendant filed a Memorandum in Support of the Commissioner's Decision [DE 22]. Plaintiff filed no reply to Defendant's Memorandum, and the time to do so has passed.

  On August 14, 2020, District Court Judge Damon R. Leichty entered an Order [DE 7] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant briefing pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court reverse the decision of the Social Security Administration and remand for further proceedings.

**PROCEDURAL BACKGROUND**

  On November 20, 2016, Plaintiff protectively filed an application for a period of disability and disability insurance benefits beginning May 1, 2016, and alleging disability beginning November 1, 2013, due to the following impairments: fibromyalgia, Sjogren's Syndrome, diastolic

dysfunction, and depression. (AR 74-75, 164, 182).[1] The application was denied initially and on reconsideration. (AR 73-96). Plaintiff then requested a hearing (AR 108-09), which was held before an Administrative Law Judge (ALJ) on January 7, 2019. (AR 31). On March 13, 2019, the ALJ issued an unfavorable decision, making the following findings:[2]

    1.    The claimant last met the insured status requirements of the Social Security Act on March 31, 2018.

    2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 1, 2013 through her date last insured of March 31, 2018.

    3.    Through the date last insured, the claimant had the following severe impairments: osteoarthritis of the bilateral hips, fibromyalgia, Sjogren's syndrome, right carpal tunnel syndrome status post release, and obesity.

    4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

    5.    [T]hrough the date last insured, the claimant had the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a). Specifically, the claimant could lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently. She could stand and walk for two hours in an 8-hour day, and sit for six hours in an 8-hour day. The claimant could not climb ladders, ropes, or scaffolds; but could occasionally climb ramps and stairs. In addition, she could never crawl; but could occasionally stoop, kneel, and crouch. The claimant could have no exposure to unprotected heights, moving mechanical parts, or slippery and or wet terrain. She could frequently handle, finger, and feel with the right upper extremity. She could have occasional exposure to extreme cold or extreme heat as part of the job duties. The claimant's work was required to be performed indoors and she was required to use a cane to ambulate.

    6.    Through the date last insured, the claimant was capable of performing past relevant work as an office manager, and claims clerk, as actually and generally

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

performed. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 1, 2013, the alleged onset date, through March 31, 2018, the date last insured.

(AR 17-26).

The Appeals Council denied Plaintiff's request for review on March 30, 2020 (AR 1-6), rendering the ALJ's November 2018 decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.

1997)). At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether she has engaged in substantial gainful activity since the alleged onset of disability, (2) whether she has a medically determinable impairment or combination of impairments that is severe, (3) whether her impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v.*

*Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts three grounds for reversal of the ALJ's March 2019 decision. She contends the ALJ: (1) incorrectly assessed Plaintiff's bilateral hand use and related physical RFC; (2) incorrectly evaluated Plaintiff's bilateral hip arthritis under Listing 1.02; and (3) incorrectly assessed Plaintiff's subjective pain and other symptoms. (P's Brief 15-23, ECF No. 16). As explained below, while the Court disagrees with some of Plaintiff's arguments, it recommends remand on each issue.[3]

### I.     Plaintiff's Physical RFC

Plaintiff's first ground for appeal challenges the ALJ's assessment of Plaintiff's bilateral hand use and related physical RFC determination. As noted above, the ALJ found Plaintiff capable of a reduced range of sedentary work and that she "could frequently handle, finger, and feel with the right upper extremity." (AR 20). But Plaintiff argues that she also suffered carpal tunnel syndrome in her dominant left hand, and the ALJ identified only Plaintiff's right carpal tunnel syndrome as a severe impairment and "failed to address the limitations in [Plaintiff's] left hand, choosing to only address the milder issue in the right hand." (P's Brief at 16, ECF No.

---

[3] Plaintiff also argues that the ALJ incorrectly assumed an alleged onset date of November 1, 2013 (AR 15), whereas Plaintiff's application alleged a disability onset date of May 1, 2016 (AR 164), which Plaintiff maintains "correlates with the onset of [her] autoimmune disease." (P's Brief at 15, ECF No. 16). As the Commissioner correctly explains, however, while Plaintiff's application listed a May 2016 alleged onset date, her disability report stated an inability to work due to her alleged impairments since November 1, 2013. (D's Mem. at 5, ECF No. 22 (citing AR 182)). The Commissioner also rightly notes that Plaintiff has failed to explain how the ALJ's consideration of a longer disability period that encompasses the disability period Plaintiff alleges caused her any prejudice. The Court therefore agrees with the Commissioner that any error in the ALJ's consideration of an earlier alleged onset date was harmless and therefore provides no independent basis for remand, given that the ALJ nevertheless considered the full disability period Plaintiff alleges.

5

16). According to Plaintiff, the ALJ incorrectly "failed to identify the left carpal tunnel syndrome as a severe impairment and failed to assess any functional limitations due to the diminished grip strength, pain and numbness in the wrists." (*Id*. at 16-17).

The Commissioner responds that any failure to find Plaintiff's left carpal tunnel syndrome a severe impairment is "immaterial" because "the ALJ found that Plaintiff satisfied the severity requirement" by finding other severe impairments (including carpal tunnel syndrome in Plaintiff's right hand) and then "proceeded with the disability analysis." (D's Mem. at 7, ECF No. 22. The Court agrees that any error in failing to find a severe impairment at step two would be harmless where (as here) the ALJ found other severe impairments and proceeded with the sequential analysis. *See Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) ("Step two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."). But as the Commissioner further acknowledges, the ALJ must nevertheless consider "all of the functional limitations resulting from the established impairments, not just the ones identified as severe." (ECF No. 22, at 7). *See also Ray*, 915 F.3d at 492 ("Either way, the ALJ must later consider the limitations imposed by all impairments, severe and non-severe."). The severity of an applicant's conditions therefore affects other aspects of an ALJ's disability analysis, including the determination of residual functional capacity, "and thus, no matter what happens at step two, a correct assessment remains important." *Farrell v. Astrue*, 692 F.3d 767, 772 (7th Cir. 2012). And here, the ALJ's decision raises several questions as to whether he properly considered the severity of Plaintiff's left-handed carpel tunnel syndrome when determining her RFC.

While the Commissioner argues the ALJ "explicitly discussed Plaintiff's left CTS and deemed it 'not severe'" (ECF No. 22, at 8 (citing AR 18)), the decision does no more than mention that impairment as one of several that the ALJ summarily concluded (without explanation or record

6

support) was "successfully treated, controlled, stabilized, or otherwise do not more than minimally affect the claimant's ability to perform basic work activities." (AR 18). Whereas the ALJ discussed Plaintiff's diagnosis of mild carpal tunnel syndrome in her right hand and related carpal tunnel release surgery on her right hand in January 2018 (AR 21), the decision failed to address Plaintiff's prior diagnosis in November 2017 of moderate carpal tunnel syndrome in her dominant left hand and carpal tunnel surgery on her left hand in December 2017. (AR 705-10). Moreover, as Plaintiff correctly explains, the document cited by the ALJ for Plaintiff's diagnosis of mild carpal tunnel syndrome in her right hand (AR 21 (citing AR 659)) also referred to the diagnosis of moderate carpal tunnel syndrome in her left hand and the surgery on her left hand to address it, which was performed before the surgery on her right hand because the condition in her left hand was more severe. (AR 659). That document also states that Plaintiff had been experiencing carpal tunnel symptoms in her left hand for two years and that her symptoms before surgery were a severity of 7 out of 10 and included full numbness in her left hand and constant numbness in her left middle finger. (*Id*.). Yet the ALJ discussed none of these findings.

Plaintiff also identifies other treatment records from her rheumatologist between July 2016 and October 2017 reporting bilateral hand numbness, which prompted her rheumatologist to order the November 2017 EMG that confirmed Plaintiff's moderate carpal tunnel syndrome in her dominant left hand and mild carpal tunnel syndrome in her right hand. (P's Brief at 17 (citing (AR 388, 390, 425, 441, 534-35, 710-13)). Plaintiff also cites the June 2017 agency consultative medical examination by Dr. Simmons, which similarly identified bilateral hand issues. (*Id*. (citing AR 541-43)). Dr. Simmons reported that Plaintiff "just could not grip the fine motor skills for her hands," and had difficulty with "fine motor activity" such as "picking up a coin and buttoning" despite normal grip strength, and therefore concluded that Plaintiff had "reduced functioning in

7

her hands." (AR 541-43). Again, the ALJ failed to confront this evidence, and correspondingly failed to address the impairment in Plaintiff's dominant left hand.

The Commissioner acknowledges some of this evidence, but argues that the record documented no "functional limitations" in Plaintiff's left hand until June 2017 "when Dr. Simmons opined as to limited problems (with picking up a coin and buttoning)." (ECF No. 22, at 10). The Commissioner also notes that Plaintiff then had carpal tunnel surgery on her left hand in December 2017 and experienced "significant improvement by January 30, 2018." (*Id.*). Thus, according to the Commissioner, "the record did not show that Plaintiff's had significant left hand CTS problems that lasted the requisite 12-month period." (*Id.*). As discussed above, however, records relating to Plaintiff's left-handed numbness and carpal tunnel syndrome diagnosis and surgery span from July 2016 through January 2018, and indicate that Plaintiff was experiencing symptoms relating to her left-handed carpal tunnel syndrome for two years prior to November 2017. (AR 388, 390, 425, 441, 534-35, 638, 705-13). Because the ALJ failed to address this evidence, the Court has no way of knowing whether he similarly concluded that it indicated no "functional limitations" prior to Dr. Simmons' June 2017 examination as the Commissioner now contends, and the Court "is confined to the rationales offered by the ALJ." *Shauger v. Astrue*, 675 F.3d 690, 695-96 (7th Cir. 2012).[4] But as importantly, the ALJ's decision acknowledges Plaintiff's complaint of "neuropathy in her hands" and states that this complaint has been accommodated with a "manipulative" limitation (AR 22), but then fails to explain why an RFC limitation to frequent handling and fingering was required for only Plaintiff's right hand, when the record indicates a history of more severe carpal tunnel syndrome in her dominant left hand. (AR 20). As Plaintiff argues, moreover,

---

[4] *See also Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018) ("the ALJ's decision cannot be defended on a basis not articulated in her order"); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) ("the ALJ did not rely on this rationale in his opinion, so the Commissioner cannot now rely on it").

the potential need for a limitation for Plaintiff's left hand could have an impact on the jobs she can perform, given the Vocational Expert's testimony that a more restrictive limitation to occasional fingering might limit or preclude Plaintiff's ability to work. (P's Brief at 17-18 (citing AR 68)).

Accordingly, this Court recommends remand for reconsideration of Plaintiff's physical RFC, particularly relating to her capacity for handling and fingering with her left hand, in light of the evidence discussed above. But this is not to say that modification of Plaintiff's RFC or a disability finding are required, only that the ALJ failed to address this evidence and explain why no handling and fingering limitation was required for Plaintiff's more severely impaired, dominant left hand. Whether Plaintiff's RFC should be modified and to what extent would be for the ALJ to determine on remand. And in the event the ALJ were to determine a further handling and fingering limitation is required for any part of the period at issue, it would also be necessary to apprise any Vocational Expert relied upon of that change before making a disability determination. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("the ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform" (quoting *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)).

**II.    The ALJ's Listing Determination**

Plaintiff next challenges the ALJ's analysis of Plaintiff's bilateral hip arthritis under Paragraph A of Listing 1.02, which requires the following:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.02A. Plaintiff contends the ALJ's determination that her bilateral hip arthritis did not meet this Listing was not supported by substantial evidence, and that the ALJ further erred in finding that her impairments in combination do not equal this Listing. (P's Brief at 18-21, ECF No. 16). The Court addresses each argument in turn.

### A. The ALJ's Analysis Under Listing 1.02A

The ALJ's analysis of Listing 1.02A states as follows:

> The claimant's impairments failed to meet the listing for 1.02 (major dysfunction of a joint) because the record, consistent with the findings below, does not demonstrate gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on imaging studies of joint narrowing, bony destruction, or ankylosis of the affected joint(s), with involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle), resulting in the inability to ambulate effectively.

(AR 19). Plaintiff argues this analysis was "superficial, and medically incorrect," because three imaging studies and various medical opinions confirmed her bilateral hip arthritis, narrowing of both hip joints, and need for hip replacement surgery. (P's Brief at 9-12, 19-20, ECF No. 16 (citing AR 256, 601-02, 697-98, 738)). According to Plaintiff, the record also shows stiffness, chronic pain, and limited range of motion in her hips, and that she is "fully dependent" on a cane, which (Plaintiff says) further demonstrates her inability to ambulate effectively. (*Id*. at 20).

The Commissioner disputes only the last of these assertions – that is, Plaintiff's claimed inability to ambulate effectively. (D's Mem. at 10-12, ECF No. 22). Thus, the Commissioner does not challenge Plaintiff's assertions that medical evidence documents her chronic pain, limited range of motion, and joint narrowing. Indeed, contrary to the ALJ's listing analysis (AR 19), the decision acknowledged evidence of Plaintiff's "limited range of motion of the bilateral lower extremities; and decreased hip and waist motion" (AR 22-23), as well as imaging that "noted mild to moderate joint space narrowing of both hips." (AR 21). Instead, the Commissioner contends

that the ALJ's listing determination may be affirmed because "Plaintiff has failed to show that she had an inability to ambulate effectively under Listing 1.02A." (ECF No. 22, at 11). Thus, the Commissioner urges that any error in the ALJ's failure to consider medical evidence demonstrating other elements of Listing 1.02A is harmless because Plaintiff fails to meet the further requirement of an inability to ambulate effectively. *See Jonie G. v. Saul*, No. 18 CV 50100, 2019 WL 6716610, at *4 (N.D. Ill. Dec. 10. 2019) ("In effect, the Commissioner is arguing that the ALJ's perfunctory analysis was harmless error."). But an error is harmless "only when a court can 'predict with great confidence that the result on remand would be the same.'" *Id*. (quoting *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013)). And the Court is unable to make such a prediction here.

As both sides acknowledge, ineffective ambulation for purposes of Listing 1.02A is defined in Listing 1.00(B)(2)(b), which states as follows:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.00B(2)(b); *see also* P's Brief at 20, ECF No. 16 (quoting same); D's Mem. at 11, ECF No. 22 (same). The Commissioner contends Plaintiff cannot

11

meet this definition because she "has not shown that she required the use of a hand-held assistive device that limited the functioning of both arms." (ECF No. 22, at 11). The Commissioner further argues "Plaintiff has also not shown that she matched any of the aforementioned examples of ineffective ambulation," and "has not pointed to any objective medical evidence or any medical opinion evidence supporting an inability to ambulate effectively." (*Id*.). But in addition to acknowledging other requirements of Listing 1.02A, the ALJ also noted evidence that Plaintiff has an antalgic gait, found she "requires the use of a cane to ambulate," and included such a limitation in her RFC. (AR 20, 22-23). The ALJ and both agency reviewers also noted Plaintiff's difficulty climbing stairs (AR 21, 80, 92)), and Plaintiff also points to the agency consultative examination by Dr. Simmons, who observed that Plaintiff walked slow and with a limp due to hip pain, and was "unable to walk without her cane." (AR 542, 545).

While this evidence may not be sufficient to meet the definition of ineffective ambulation, it is at least some indication that Plaintiff may not be "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living" as required for effective ambulation, and "the inability to walk a block at a reasonable pace on rough or uneven surfaces," "to carry out routine ambulatory activities," or "to climb a few steps at a reasonable pace with the use of a single hand rail," as might indicate ineffective ambulation. *See* Listing 1.00B(2)(b). And as the court explained in *Jonie G.*, the Seventh Circuit has ordered remands "where the listings analysis was perfunctory and there was some evidence indicating that the plaintiff may have met the listings." 2019 WL 6716610, at *4 (citing *Minnick v. Colvin*, 775 F.3d 929, 936 ("Minnick's degenerative disc disease may well have satisfied Listing 1.04A. We cannot discern from the ALJ's scant analysis whether she considered and dismissed, or completely failed to consider, this pertinent evidence.")); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Because the only evidence in the record demonstrated significant limitations in Kastner's range

of motion, the ALJ's contrary conclusion is peculiar and unexplained.")). Courts in this district and elsewhere have similarly ordered remands for reconsideration of a listing where the ALJ acknowledged the claimant's use of a cane and then failed to explain his or her determination that the claimant could ambulate effectively, particularly when the record contained additional evidence indicating that the Listing might be met.[5] This Court concludes that the same reasoning warrants remand here.

Accordingly, the Court recommends that this case be remanded for reconsideration of whether Plaintiff's bilateral hip arthritis met the requirements of Listing 1.02A, including ineffective ambulation. But this is not to suggest that a finding of presumptive disability is required, as Plaintiff may be unable to demonstrate ineffective ambulation or other requirements of the Listing. The Court concludes only that the ALJ's decision failed to address the evidence discussed above in light of the Listing's requirements sufficiently to allow for "meaningful judicial review" of its conclusions, to the extent they were in fact reached. *See Minnick*, 775 F.3d at 936 (quoting *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)).

### B.   Medical Equivalence

Plaintiff further contends that "the combination of her impairments, specifically including the morbid obesity impact on her hips," equal Listing 1.02A, and that the ALJ erred in failing to

---

[5] *See, e.g.*, *Jonathan H. v. Saul*, 1:20-cv-525, 2021 WL 1206567, at *5 (S.D. Ind. Mar. 31, 2021) (ALJ's finding that claimant required a cane for ambulation was "not enough to meet the ALJ's step-three burden because it does not satisfactorily address the relevant standard of Listing 1.02(A). . . she must adequately evaluate whether the claimant can 'sustain[] a reasonable walking pace over a sufficient distance,' 20 C.F.R. pt. 404, Subpt. P, app. 1, § 1.00(B)(2)(b)(2), and consider the examples of ineffective ambulation"); *Kerns v. Saul*, 2:20-CV-4, 2021 WL 1037857, at *4 (N.D. Ind. Mar. 18, 2021) (ALJ improperly "failed to discuss ineffective ambulation at all or address any evidence during his Step 3 severity analysis" after finding claimant "required the use of a medically necessary cane when walking more than one hundred feet or when walking on uneven or ascending or descending surfaces"); *Winter v. Berryhill*, No. 2:17-cv-283, 2018 WL 4090982, at *5 (N.D. Ind. Aug. 28, 2018) ("Because there is objective medical evidence that the ALJ did not address which supports a finding that is inconsistent with the ALJ's conclusion, the court cannot properly review the ALJ's decision. . . . the ALJ indicated that the record was devoid of evidence of spinal stenosis as well as a lack of evidence of ineffective ambulation. However, contrary to the ALJ's finding, Winter has pointed to MRI's of the lumbar and thoracic spine that documented spinal stenosis multiple times. . . . Also, there is documented observations of poor and abnormal gait and use of a cane or walker at times.").

seek a medical opinion on that issue. (P's Brief at 21, ECF No. 16). According to Plaintiff, that was "not a determination that an ALJ is permitted to make on his own." (*Id.*). The Court disagrees. The issue of equivalence is for the ALJ to decide. *See Rhiana J. v. Saul*, 1:18-cv-03147, 2019 WL 4183974, at *5 (S.D. Ind. Sept. 4, 2019) ("it is the ALJ that is responsible for making the determination of medical equivalence") (citing SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017) ("the adjudicator is responsible for the finding of medical equivalence")). And while the regulations allow an ALJ to solicit a medical opinion on that issue, they do not require it. *See* SSR 17-2p, 2017 WL 3928306, at *3 ("To assist in evaluating this issue [of whether an impairment meets or medically equals a listing] adjudicators at the hearings level *may ask for* and consider evidence from medical experts (ME) about the individual's impairment(s), such as the nature and severity of the impairment(s).") (emphasis added).[6] The Court therefore finds no error based on the lack of a medical expert opinion concerning medical equivalence.

Additionally, as the Commissioner argues, Plaintiff fails to explain how her combined impairments medically equal Listing 1.02A. (D's Mem. at 12, ECF No. 22). Mere reference to Plaintiff's combined obesity and hip arthritis does not suffice; Plaintiff must demonstrate how that combination medically equals each requirement of the listing at issue. *See Dejohnette v. Colvin*, No. 13 C 1787, 2015 WL 9315536, at *11 (N.D. Ill. Dec. 23, 2015) (finding no error in determination of no medical equivalence where claimant failed to explain "how his obesity exacerbated his condition and should have led to a finding of disability in ways not considered by

---

[6] *See also Shawn S. v. Saul*, No. 1:19-cv-04046, 2021 WL 363557, at *4 (S.D. Ind. Feb. 3, 2021) ("Under SSR 17-2p, SSA no longer 'require[s] the adjudicator to obtain [Medical Expert] evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment'" (quoting SSR 17-2p, 2017 WL 3928306, at *4)); *Zieroth v. Saul*, No. 1:19-CV-181, 2020 WL 3490235, at *3 (N.D. Ind. May 29, 2020) ("while ALJs must rely on experts to interpret medical evidence, they are not necessarily required to obtain a medical opinion specifically as to whether a claimant meets or equals a listing") (citing SSR 17-2p, 2017 WL 3928306, *3-4 (Mar. 27, 2017) (explaining that ALJs determine whether a listing is met or equaled, and "may ask for and consider evidence from medical experts")), adopted by 2020 WL 3491979 (N.D. Ind. June 26, 2020).

the ALJ"); *Mueller v. Astrue*, 860 F. Supp. 2d 615, 637 (N.D. Ill. 2012) (no medical equivalence of Listing 1.02 based on obesity where claimants failed to "articulate how her obesity affected her symptoms"). Accordingly, this Court concludes that Plaintiff has failed to demonstrate any error in the ALJ's determination of no medical equivalence that independently requires remand. The ALJ's decision indicates that he considered Plaintiff's obesity in combination with her other impairments and determined that they did not medically equal a listing (AR 19-20); and as the Commissioner argues, the ALJ was not required to "articulate specific evidence supporting" that determination. (ECF No. 22, at 12 (quoting SSR 17-2p, 2017 WL 3928306, at *4)).

That said, in the event remand is ordered for reconsideration of whether Plaintiff's bilateral hip arthritis meets Listing 1.02A as recommended above, it would be prudent for the ALJ to reconsider also whether Plaintiff's combined impairments medically equal that Listing in light of the evidence discussed in connection with that recommendation. *See supra* Part A. While the Commissioner is correct that an ALJ is not required to "articulate specific evidence" supporting a finding that an impairment does not medically equal a listed impairment (ECF No. 22, at 12 (quoting SSR 17-2p)), the Court is unable to determine from the ALJ's decision whether his medical equivalence determination might be affected by any of the medical evidence regarding Plaintiff's bilateral hip arthritis that this Court has recommended be considered on remand. The Court therefore recommends that, during any such remand, the ALJ also reconsider whether Plaintiff's combined impairments medically equal Listing 1.02A after considering that evidence, and whether any medical opinion is needed to make that determination.[7]

---

[7] Although the Commissioner is also correct that both agency reviewers found Plaintiff did not meet Listing 1.02 (ECF No. 22, at 12), the ALJ did not rely on those opinions for his listings determinations. (AR 19-20, 23). *See also Jonie G*, 2019 WL 6716610, at *4 (rejecting Commissioner's argument that ALJ relied upon state agency opinions for step-three findings where decision discussed those opinion only concerning claimant's RFC). And while SSR 17-2p does not require a medical expert opinion regarding medical equivalence, it would nevertheless be prudent for the ALJ to consider whether one is needed after reviewing the imaging and other medical evidence regarding Plaintiff's bilateral hip arthritis discussed in Part A above.

### III. Plaintiff's Subjective Allegations

Finally, Plaintiff challenges the ALJ's assessment of Plaintiff's subjective allegations of physical and mental limitations and their impact on her RFC. Plaintiff argues that the ALJ discredited her subjective pain and related limitations because they were not fully supported by the objective medical evidence, but then failed "to address important medical evidence of bilateral carpal tunnel and the hip osteoarthritis imaging and specialists opinions." (P's Brief at 21, ECF No. 22 (citing AR 23)). As a result, Plaintiff contends, the ALJ failed "to credit the Plaintiff's contentions on the severity of the pain, fatigue, [and] stiffness" related to those conditions. (*Id*. at 21-22). Plaintiff further claims that her "concentration and persistence on any work task would be significantly impaired due to the need for unscheduled breaks, and discomfort and lack of mobility," and that the ALJ further failed to address her claims of fatigue, anxiety, depression, and medication side-effects. (*Id*. at 21-23). The Court agrees with these arguments in part.

Regarding Plaintiff's carpal tunnel syndrome in her dominant left hand, the Court has already acknowledged the need to address the medical evidence relating to the diagnosis and treatment of that condition and account for any additional limitations required in Plaintiff's RFC. *See supra* Part I. Similarly, regarding Plaintiff's bilateral hip arthritis, the Court has also discussed the need to address all of the medical imaging and opinions relating to that condition, particularly given the ALJ's acknowledgment of Plaintiff's "limited range of motion of the bilateral lower extremities; and decreased hip and waist motion" (AR 22-23) and imaging that "noted mild to moderate joint space narrowing of both hips." (AR 21). *See also supra* Part II, A. To the extent the ALJ discounted Plaintiff's subjective allegations as "not fully supported by the objective medical evidence and treatment history" (AR 23), the Court recommends that the ALJ reconsider Plaintiff's subjective allegations of pain and limitations associated with her bilateral hip arthritis after

considering additional evidence that Plaintiff has identified (*e.g.*, AR 256, 601-02, 697-99, 738), and then determine whether any adjustment of her RFC is warranted. But again, this is not intended to imply that Plaintiff's allegations should be credited, or her RFC modified, only that the ALJ should fully consider the medical evidence relating to these conditions before determining that Plaintiff's subjective allegations are not fully supported by it.

While the Court recommends remand regarding the foregoing physical complaints, Plaintiff's bare assertions of fatigue, anxiety, depression, medication side-effects, and "concentration and persistence" limitations due to "discomfort and lack of mobility" are unpersuasive. (P's Brief at 21-23, ECF No. 16). As the Commissioner argues, the ALJ's assessment of such claims should not be disturbed unless "patently wrong." (ECF No. 22, at 13, 15). *See also Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (same). And here, Plaintiff offers no record support for these allegations. (ECF No. 16, at 21-23). Additionally, the medical record contradicts Plaintiff's claimed concentration difficulties (AR 676), and both agency reviewers found no concentration limitations (AR 78, 90), as did the ALJ. (AR 18). Plaintiff has identified no basis to disturb that finding. Nor has Plaintiff provided any support for her cursory assertion of medication side-effects. (ECF No. 16, at 23). And many treatment records show that depression, anxiety, and fatigue were not a problem, or at least controlled. (AR 258, 262, 269, 308, 312, 390, 392-93, 395, 427, 429, 475, 513, 524, 547, 553, 558, 569, 629). Given this evidence and the deferential standard of review, this Court finds no error in the ALJ's assessment of these claims. Accordingly, while the Court recommends remand for reconsideration of Plaintiff's subjective complaints regarding her bilateral carpal tunnel syndrome and hip arthritis and their impact on her RFC, the Court makes no such recommendation regarding Plaintiff's claims of concentration and persistence limitations, fatigue, anxiety, depression, and medication side effects.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that the District Court reverse the decision of the Commissioner of the Social Security Administration and remand for further proceedings.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 16th day of July, 2021.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT